UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DAVIS,

                                        Plaintiff,                    **OPINION AND ORDER**

                        - against -                              15 Civ. 7710 (ER)

GOODWILL INDUSTRIES OF GREATER NEW
YORK AND NEW JERSEY, INC.

                                        Defendant.

Ramos, D.J.:

    *Pro se* Plaintiff Jane Davis ("Plaintiff") brings this action against Goodwill Industries of

Greater New York and New Jersey, Inc. ("Defendant" or "Goodwill"), alleging employment

discrimination and retaliation.  Before the Court is Defendant's motion to dismiss the Amended

Complaint.  For the reasons discussed below, Defendant's motion is GRANTED in part and

DENIED in part.  Plaintiff will be given an opportunity to file a Second Amended Complaint.

## I.  BACKGROUND[1]

    Plaintiff is a 68-year old black female who is currently residing in New York City.  Doc.

5 at 3; Doc. 34 at 2.[2]  From December 18, 2013 to December 15, 2014, Plaintiff was employed

by Goodwill at one of its Manhattan locations, 2231 Third Avenue, as a part-time employee.

---

[1] The Court accepts as true for purposes of this motion the allegations contained in the Amended Complaint, the documents integral thereto and relied upon in it, and Plaintiff's brief in opposition to the motion.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012) ("For the purpose of reviewing the grant of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept as true the facts alleged in the Complaint, drawing all reasonable inferences in favor of the plaintiff."); *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda are consistent with the allegations contained in the Complaint, they may be read as supplements to the pleadings.").

[2] Because the internal pagination of Plaintiff's pleadings is sometimes confusing, the Court will refer to the page numbers generated on her filings by the ECF system.

Doc. 5 at 7.  At all relevant times during her employment, Plaintiff's supervisor was Judith Ramos, Manager of the store ("Manager Ramos").  *Id.*  Plaintiff was also regularly supervised by Victor De La Torre, Assistant Manager of the store ("Assistant Manager De La Torre") and Guillermina Despiau, Goodwill's District Manager ("District Manager Despiau").  Doc. 5 at 7; Doc. 34 at 2.

Plaintiff alleges that while she worked at Goodwill, she was subjected to a number of discriminatory practices based on her race, age, sex, and disability.  Doc. 5-1 at 40.  However, Plaintiff's primary allegation is that she was treated less favorably than the other employees because she is black and not Hispanic.  Doc. 5-2 at 1.  Although the Court cannot recount each and every incident described in Plaintiff's lengthy and, at times, confusing submissions, the most salient aspects of Plaintiff's experience are highlighted below.

Plaintiff claims that the discriminatory treatment began soon after she started working at Goodwill, citing a number of instances in which she was held to stricter rules than the Hispanic employees.  For example, on her first day, December 18, 2013, Manager Ramos advised Plaintiff that the company's dress code prohibited employees from wearing jeans, leggings, light colored pants, hats, and other headwear.  Doc. 5 at 7.  Two months later, on February 18, 2014, Manager Ramos directed Plaintiff to remove her knitted hat during her shift, because it was against the dress code policy.  *Id.* at 23; Doc. 5-1 at 2.  However, Plaintiff alleges that she repeatedly witnessed the Hispanic employees wearing prohibited items during their shifts without receiving any kind of warning or reprimand, and that Manager Ramos herself often violated the dress code policy.  Doc. 5 at 23.  As another example, on March 17, 2014, Manager Ramos confronted Plaintiff about saving items behind the register for later purchase, advising her that she was prohibited from doing so in the future.  Doc. 5-2 at 3.  Plaintiff claims that Hispanic employees

2

regularly saved items for later purchase, however, without receiving any sort of discipline or warning.  *Id.*  Plaintiff also cites a number of instances in which Hispanic employees were not reprimanded for being late or absent, although she herself was.

Plaintiff further alleges that Hispanic employees regularly received favorable treatment as compared to non-Hispanic employees.  Plaintiff claims that Goodwill hired black employees like herself to work part-time, rather than full-time, in order to avoid providing them the benefits of a full-time employee.  Doc. 34 at 3.  Plaintiff also alleges that Hispanic employees were allowed to take weekends off, while she had to work; that Hispanic employees were allowed to take breaks, while she was not; and that Hispanic employees were never required to work on a floor of the store alone, while she regularly was asked to do so.  *Id.*; Doc. 5-2 at 9, 12, 14.  Plaintiff additionally alleges that Manager Ramos often made comments referring to "we Puerto Ricans." Doc. 5 at 7.

Plaintiff also describes a number of incidents in which she felt she was singled out or treated unfairly.  For example, on January 17, 2014, Manager Ramos spoke to Plaintiff about coming in late, even though a number of other employees were similarly late due to transit delays.  *Id.* at 10.  In addition, on May 5, 2014, Manager Ramos confronted Plaintiff in the break room and falsely accused her of missing her entire shift the previous day.  *Id.* at 13.  Plaintiff states that she believes Manager Ramos made the false accusation because Plaintiff is an "older person" who "probably would not remember whether" she worked the day before.  *Id.*  Plaintiff also describes an incident where she felt "embarrassed and humiliated" in front of the customers. *Id.* at 11.  Manager Ramos allegedly called to her through the intercom, stating that she needed to come down to purchase the items she saved by the register; when Plaintiff arrived at the register, there were several baskets containing items other employees intended to purchase.  *Id.*

Moreover, Plaintiff alleges that most employees referred to her as "Ms. Jane," which she seems to suggest is a reference to her age.  *Id.* at 34.

Plaintiff claims that Goodwill's discriminatory treatment was directed not just at her and the other non-Hispanic employees, but also towards other black and non-Hispanic customers of the store.  For instance, on March 17, 2014, Plaintiff alleges that one of Goodwill's security guards, Lonnell Sessoms, caught two Hispanic males stealing a bag of shoes.  *Id.* at 11.  When Manager Ramos arrived, she spoke to the two men in Spanish and eventually advised Sessoms that the men did not know what they were doing and that no further action was required.  *Id.*  Plaintiff claims that, by contrast, when black customers were caught stealing, they were taken to an area in the back of the store, charged, and prohibited from entering the store again.  *Id.*  Similarly, Plaintiff alleges that black customers were regularly charged higher prices for items than Hispanic customers, Doc. 5-2 at 4, and that several black customers have publicly accused Manager Ramos of being a racist, *id.* at 13.

On May 7, 2014, Plaintiff met with Manager Ramos and told her that she felt she was being treated unfairly.  Doc. 5 at 13–14.  Specifically, Plaintiff told Manager Ramos that she treated the Hispanic employees differently than the black employees.  Doc. 5-2 at 6–7.  Plaintiff stated that she did not feel comfortable working in a hostile environment and thus requested a transfer to a different location.  Doc. 5 at 13–14; Doc. 5-2 at 5.  Manager Ramos told Plaintiff that she would have to speak with District Manager Despiau regarding a transfer.  Doc. 5 at 13.

On May 17, 2014, District Manager Despiau was visiting the store, and Plaintiff asked to speak with her.  Doc. 5-2 at 5.  Plaintiff told Despiau that she felt she was being treated unfairly and requested a transfer to another location.  Doc. 5 at 12.  Despiau asked Assistant Manager De La Torre, who was also present, whether Plaintiff had been treated unfairly, and he responded in

the negative. *Id.* Despiau then informed Plaintiff that she was not transferring anyone at that time. *Id.* Plaintiff asserts that, contrary to Despiau's representation, other Hispanic employees were granted transfer requests.[3]

Plaintiff alleges that Goodwill retaliated against her soon after she complained about discriminatory treatment. Namely, on May 22, 2014, Manager Ramos called Plaintiff into her office and gave her an "informal" written warning for arriving late to work that day. Doc. 5-2 at 38. According to Plaintiff, Manager Ramos also informed her that "any problems should remain in the office . . . with her and" Assistant Manager De La Torre. Doc. 5-1 at 2. Plaintiff assumed Manager Ramos was referring to the complaint she made to District Manager Despiau five days earlier. *Id.*

Plaintiff signed the informal warning in protest, for what appears to be a number of reasons. First, Plaintiff claims that she and other employees were late that day as a result of miscommunication during the scheduling process. Doc. 5-2 at 6. Plaintiff believed she was scheduled to come in at 11:30 a.m. instead of 9:30 a.m., but her hours were switched with a Hispanic employee's hours without her knowledge. *Id.* Second, Plaintiff claims that management was required, pursuant to Goodwill's Employee Handbook, to counsel her at least two times regarding any recurring problem in the workplace before filing such a report, and that it had failed to do so. *Id.* at 7. Finally, Plaintiff asserts that Hispanic employees who were known to be habitually late were never similarly reprimanded. *Id.* at 6. One Hispanic employee,

---

[3] One of the Hispanic employees transferred was Assistant Manager De La Torre's girlfriend. Doc. 5 at 14. She was having conflicts with the other employees because during her shift she would follow Assistant Manager De La Torre around the store instead of fulfilling her workplace duties. *Id.* The second Hispanic employee granted a transfer was Modesto. Doc. 5-2 at 11. Manager Ramos granted him a transfer to one of Goodwill's New Jersey locations since he claimed he moved and was now closer to that other location. *Id.*

Benny Moret, even admitted to "just being a late person" and, to Plaintiff's knowledge, he never had any disciplinary action taken against him. *Id.*

On June 6, 2014, Plaintiff filed a charge with the EEOC, complaining of discrimination in the workplace based on race, age, and disability. Doc. 5 at 38–40; Doc. 5-1 at 1. The EEOC sent a Notice of Charge to Goodwill on June 9, 2014, stating that it required no action from Goodwill at that time. Doc. 5-1 at 7.[4] Plaintiff alleges that Goodwill further retaliated against her for filing the EEOC charge.

On June 23, 2014, Plaintiff visited her doctor's office because she was not feeling well. Doc. 5 at 26; Doc. 5-2 at 10–11, 17. The doctor diagnosed Plaintiff with a virus and gave her a medical excuse note, certifying that she had seen the doctor and could return to work on July 7, 2014. Doc. 5-2 at 17. Plaintiff claims that she called the store afterwards and spoke with Assistant Manager De La Torre about taking time off. Doc. 5 at 26; Doc. 5-2 at 10–11. Plaintiff asked Assistant Manager De La Torre if she should fax over her medical note; he told her to just bring it in the day she returned to work. *Id.* Plaintiff claims she nevertheless faxed over the note that same day. *Id.*[5]

On July 15, 2014, after Plaintiff had returned to work, Plaintiff was called in to a meeting with Manager Ramos, Assistant Manager De La Torre, and Jeff Burnshaft, Goodwill's Human Resources Executive Director. Doc. 5 at 27–28; Doc. 5-2 at 11. Burnshaft began by accusing

---

[4] Plaintiff attaches to her Amended Complaint a Notice of Charge from the EEOC that is addressed to Goodwill and dated June 9, 2014. Doc. 5-1 at 7. The June 9, 2014 Notice makes clear that Plaintiff filed a charge against Goodwill under Title VII and the ADEA on the basis of race, national origin, and age. *Id.* Goodwill asserts, however, that it did not receive notice of Plaintiff's EEOC charge until July 21, 2014. Def.'s Mem. at 4. In support, Goodwill attaches a Notice of Charge from the EEOC dated July 21, 2014, inviting Goodwill to participate in the EEOC's mediation program. Hoey Decl., Ex. A at 1. On a motion to dismiss, the Court must draw all reasonable inferences in Plaintiff's favor, including the inference that Goodwill received notice of her EEOC charge on the earlier date of June 9, 2014.

[5] The fax attached to the Amended Complaint appears to have been sent on July 2, 2014. Doc. 5-2 at 17.

Plaintiff of failing to notify her supervisors that she would be absent on June 23, 2014.  *Id.*
Plaintiff explained that she did call ahead that day, but Assistant Manager De La Torre denied
receiving the call.  *Id.*  Burnshaft threatened Plaintiff that she would be fired the next time she
was absent and did not call ahead.  *Id.*[6]  Plaintiff then simultaneously received two disciplinary
reports regarding her lengthy absence: a "formal written warning" regarding her "no call/no
show" on June 23, 2014, Doc. 5-2 at 21, and a "final written warning" regarding her "no call/no
show" on June 30, 2014 and July 1, 2014, *id.* at 22.

That same day, Plaintiff also met with Manger Ramos to discuss her workplace
performance.  Doc. 5 at 27.  Manager Ramos informed Plaintiff that she was giving her a 2.1 out
of 5 overall performance assessment rating on her evaluation report.  *Id.*  In the evaluation,
Manager Ramos commented that "Jane needs to improve her attendance, and improve speed
when working on the sales floor.  She does not show any enthusiasm in her job."  Doc. 5-2 at 25.
Plaintiff refused to sign the evaluation form because she felt it was an unfair representation of
her work performance.  *Id.* at 24.

On July 21, 2014, the EEOC issued a second Notice of Charge to Goodwill, inviting
Goodwill to participate in the EEOC's mediation program.  Doc. 5-1 at 11.  The EEOC then sent
a letter to Goodwill on September 3, 2014, notifying it that Plaintiff's charge was "being
transferred from the EEOC's ADR Unit to its Enforcement Unit for investigation."  *Id.* at 12.
Goodwill submitted a position statement to the EEOC on September 9, 2014, *id.* at 14, and
Plaintiff submitted a rebuttal on October 17, 2014, Doc. 5 at 15.

---

[6] Plaintiff alleges that Hispanic employees were not similarly required to call in each and every day of a multi-day
absence.  Doc. 5 at 7.  For example, one employee, Modesto, was out from work for about ninety days, and did not
have to call in each day.  *Id.*

On October 27, 2014, Plaintiff amended her EEOC charge to include additional incidents to support her discrimination and retaliation claims, including the two disciplinary reports and the negative performance evaluation that she received on July 15, 2014.  Doc. 5-1 at 39; Doc. 5-2 at 5–6, 11–12.  Plaintiff additionally asserted discrimination on the basis of sex.  Doc. 5-1 at 40.  Less than two months later, on December 15, 2014, Plaintiff resigned from her position at Goodwill.  Doc. 5 at 7.  Plaintiff never amended her charge following her resignation.

On June 30, 2015, the EEOC sent Plaintiff a Right to Sue Notice.  *Id.* at 5.  According to the Notice, the EEOC was "unable to conclude that the information obtained establishe[d] violations of the statutes."  *Id.*  Specifically, the EEOC could "not conclude that [Plaintiff] [was] subjected to an adverse employment action motivated by discriminatory animus as defined by Commission guidelines and federal law."  Doc. 5-1 at 10.  Therefore, the EEOC dismissed the charge.  *Id.*

Approximately three months later, on September 29, 2015, Plaintiff filed this action against Goodwill.  Doc. 2.  On November 24, 2015, the Honorable Loretta A. Preska, to whom this case was previously assigned, entered an Order directing Plaintiff to amend her Complaint.  Doc. 4.  The Court found that Plaintiff's discrimination and retaliation claims were "conclusory" and that Plaintiff "fail[ed] to allege any facts suggesting that Defendant took any adverse employment action against her because of her race, sex, age, or disability."  *Id.* at 4.

On December 8, 2015, Plaintiff filed her Amended Complaint.  Doc. 5.  On the form made available by the Court for *pro se* litigants, Plaintiff checked off that she suffered employment discrimination while working for Goodwill based on race, sex, age, and disability.  *Id.* at 3.  She further marked that she was subjected to certain discriminatory conduct, including a failure to promote her, a failure to accommodate her disability, unequal terms and conditions of

employment, harassment, and retaliation.  *Id.* at 2–3.  On December 14, 2015, Plaintiff's case

was reassigned to this Court.  Goodwill now moves to dismiss Plaintiff's claims.  Doc. 27.

## II.  LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw

all reasonable inferences in the plaintiff's favor.  *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir.

2014).  The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals

of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. 556).  More specifically, the

plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has

acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from

conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *see

Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately

prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for

Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town

of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotations marks omitted).  "[T]he purpose

of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal

sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding

sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court remains obliged to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Triestman*, 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Additionally, as the Second Circuit recently noted, "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n. 1 (2d Cir. 2013) (emphasis added).

## III.  DISCUSSION

Plaintiff alleges that Goodwill discriminated against her throughout her employment on the basis of her race, age, sex, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Plaintiff also alleges that Goodwill retaliated against her for complaining about the discriminatory treatment, fostered a hostile work environment, and caused her to resign, all in further violation of these statutes.

### A.  Federal Claims

#### 1.  Discrimination

Employment discrimination claims under Title VII, the ADEA, or the ADA are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir. 2016).  Under that framework, the plaintiff must first establish a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions.  *Id.* at 802–03.  If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual.  *Id.* at 803.  Ultimately, the plaintiff will be required to prove that the defendant acted with discriminatory motivation.  *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  At the pleading stage, however, the facts alleged must merely "give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase" of the case.  *Id.* at 311.  Thus, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a *prima facie* case.

In order to establish a *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate that (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she was qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 234–35 (2d Cir. 2015).

Here, Plaintiff fails to allege that she is disabled within the meaning of the ADA. From Plaintiff's submissions, the Court gleans that Plaintiff has suffered two strokes, that her memory is "not good at times," and that she takes a number of medications. Doc. 5 at 40. In order to qualify as a disabled individual for purposes of the ADA, however, Plaintiff must have "a physical or mental impairment that substantially limits one or more [of her] major life activities;" have "a record of such an impairment;" or be "regarded as having such an impairment." 42 U.S.C. § 12102(1) (2012). Plaintiff fails to set forth facts establishing any of these prerequisites, and her discrimination claims under the ADA are therefore dismissed.[7]

In order to establish a *prima facie* case of discrimination under either Title VII or the ADEA, the plaintiff must show that (1) she belongs to a protected class, for a claim under Title VII, or is within the protected age group, for a claim under the ADEA; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003).

---

[7] For the same reason, Plaintiff's claim under the ADA that Defendant failed to accommodate her disability, Doc. 5 at 2, must also be dismissed. *See McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) ("A plaintiff states a *prima facie* failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.") (citation omitted).

Plaintiff is a black, non-Hispanic female in her sixties.  Doc. 5 at 3; Doc. 34 at 2.

Plaintiff thus qualifies for protection under both Title VII and the ADEA.  *See* 42 U.S.C.

§ 2000e-2 (2012) (listing race and sex among the classes protected under Title VII); 29 U.S.C.

§ 631 (2012) (limiting the ADEA's protections to persons who are at least forty years of age);

*see also Vill. of Freeport v. Barrella*, 814 F.3d 594, 617 (2d Cir. 2016) (holding that a plaintiff

may be able to sustain a racial discrimination claim under Title VII based on "Hispanic ethnicity

or lack thereof").

According to Plaintiff's performance evaluation, Plaintiff's "essential job functions" at

Goodwill required that she "[b]e able to stock shelves and hang goods on clothing racks."  Doc.

5-2 at 23.  Goodwill does not argue that Plaintiff could not perform these tasks, and Plaintiff

asserts that Manager Ramos often told her she was "doing a good job and keeping the shoes and

items neatly on the shelves."  Doc. 5 at 8.  The Court thus finds that Plaintiff sufficiently alleges

she was qualified for her position.

Plaintiff's discrimination claims fail upon reaching the third element, as Plaintiff fails to

sufficiently allege any adverse employment actions within the meaning of Title VII and the

ADEA.  An "adverse employment action" is one that causes a "materially adverse change in the

terms and conditions of employment."  *Galabya v. New City Bd. of Educ.*, 202 F.3d 636, 640 (2d

Cir. 2000).  "To be 'materially adverse' a change in working conditions must be 'more disruptive

than a mere inconvenience or an alteration of job responsibilities.'"  *Id.* (quoting *Crady v. Liberty

Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 2000)).  Examples of materially

adverse employment actions include "termination of employment, a demotion evidenced by a

decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices . . . unique to a particular situation."  *Id.*

(quoting *Crady*, 993 F.2d at 136); *see also Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004); *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 616–17 (S.D.N.Y. 2009).

Plaintiff does not make entirely clear which of her numerous allegations serve as the basis of her discrimination claims.  However, Plaintiff alleges, among other things, that she received reprimands and disciplinary warnings, received a negative performance evaluation; was denied a transfer request; was not promoted; and was made to work more difficult assignments than the Hispanic employees.

Although a reprimand can constitute an adverse employment action, "courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." *Honey v. County of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) (citing *Carter v. N.Y.C. Dep't of Corr.*, 7 F. App'x 99, 103 (2d Cir. 2001)). Here, the verbal and written warnings that Plaintiff received were not accompanied by any material change in her employment conditions.  She was not demoted, her pay was not docked, and she did not otherwise suffer any "setback to [her] career." *Garnett-Bishop v. New York Community Bancorp, Inc.*, No. 12 Civ. 2285 (ADS) (ARL), 2014 WL 5822628, at *28 (E.D.N.Y. Nov. 6, 2014) (quoting *Galabya*, 202 F.3d at 641).  These reprimands may not, therefore, serve as the basis of Plaintiff's discrimination claims.

Similarly, "[a] negative evaluation alone, absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss," is not considered an adverse employment action.  *Browne v. City Univ. of N.Y.*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005); *see Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001); *Chamberlin v. Principi*, No. 02 Civ. 8357 (NRB), 2005 WL 1963942, at *5 (S.D.N.Y. Aug. 16, 2005); *Siddiqi*

*v. N.Y.C. Health & Hospitals Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008).  Because

Plaintiff does not allege that her negative performance evaluation "led to any further

consequences, let alone ones that altered the conditions of her employment," *Brown v. City of

New York*, No. 14 Civ. 2668 (PAE), 2014 WL 5394962, at *8 (S.D.N.Y. Oct. 23, 2014), this

evaluation may not serve as the basis of her discrimination claims.

 A denial of a transfer may also constitute an adverse employment action, but only if there

is "objective indicia that the transfer denial 'created a materially significant disadvantage' in the

working conditions of the aggrieved employee."  *Beyer v. County of Nassau*, 524 F.3d 160, 164

(2d Cir. 2008) (quoting *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)).  If,

however, the "transfer is truly lateral and involves no significant changes in an employee's

conditions of employment, the fact that the employee views the transfer . . . positively . . . does

not of itself render the denial . . . of the transfer [an] adverse employment action."  *Williams*, 368

F.3d at 128 (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532–33 n.6 (10th Cir. 1998)).

Here, there is no indication that Plaintiff's requested transfer would have significantly changed

her conditions of employment.  Goodwill's denial of Plaintiff's transfer request cannot,

therefore, serve as the basis of her discrimination claim.

 A failure to promote may constitute an adverse employment action.  *See Treglia v. Town

of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).  However, in order to state such a claim, a plaintiff

must show that she "applied for a position and was rejected," *Sethi v. Narod*, 12 F. Supp. 3d 505,

525 (E.D.N.Y. 2014) (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 226–27 (2d Cir. 2004)), a

factual allegation that is wholly lacking here.  Plaintiff cannot, therefore, rely on a failure to

promote as the basis of her discrimination claims.

Finally, the assignment of "a disproportionately heavy workload" can constitute an adverse employment action.  *Feingold*, 366 F.3d at 152–53; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).  For example, in *Vega*, the Second Circuit found that a teacher adequately pleaded adverse action, where "he was forced to spend disproportionately more time preparing for his classes and therefore experienced a material increase in his responsibilities without additional compensation."  801 F.3d at 88.  In *Feingold*, an Administrative Law Judge for the Department of Motor Vehicles adequately pleaded adverse action, where he was assigned a heavier docket of cases than his colleagues.  366 F.3d at 152–53.  Here, Plaintiff alleges that although "it requires 2 employees to keep the floor and fitting rooms clean of clothing, shoes, bags and garbage and perform the duties of the position," she—unlike the Hispanic employees—was often asked to work her shift on a floor alone.  Doc. 5 at 7.  In contrast to the severity of the circumstances in *Vega* and *Feingold*, the Court finds that Plaintiff's contentions "fail to rise to the level of an actionable adverse employment action."  *See Hubbard v. Port Auth. of N.Y. & N.J.*, No. 05 Civ. 4396 (PAC), 2008 WL 464694, at *12 (S.D.N.Y. Feb. 20, 2008) (considering allegations that plaintiffs were assigned to "do two-person jobs individually").

The Court finds that Plaintiff's remaining allegations concerning her treatment at Goodwill did not materially change the terms and conditions of her employment.  *See Vega*, 801 F.3d at 89 (quoting *Galabya*, 202 F.3d at 640).  Rather, what Plaintiff describes are a series of "mere inconveniences or annoyances that did not alter [her] employment in a materially adverse way."  *Id.* (citing *Terry*, 336 F.3d at 138).  Thus, they too fail to rise to the level of adverse employment actions.

As Plaintiff fails to allege any adverse employment actions in the context of her discrimination claims under Title VII and the ADEA, those claims are dismissed.[8]

## 2. Retaliation

The *McDonnell Douglas* burden-shifting framework used to analyze claims of discrimination also applies to claims of retaliation under Title VII, the ADEA, and the ADA. *Terry*, 336 F.3d at 141; *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). To state a *prima facie* case for retaliation under these statutes, a plaintiff must show that: (1) she was engaged in protected activity known to the defendant; (2) an adverse action was taken against her; and (3) a causal connection exists between the protected activity and the adverse action. *Id.*

Goodwill concedes that Plaintiff's EEOC charge constitutes protected activity. Def.'s Mem. at 18. Plaintiff also complained about her treatment on two prior occasions. First, on May 7, 2014, Plaintiff complained to Manager Ramos that she was being treated unfairly and that the Hispanic employees were being treated differently than the black employees. Doc. 5-2 at 6–7. Second, on May 17, 2014, Plaintiff complained to District Manager Despiau, in the presence of Assistant Manager De La Torre, that she felt she was being treated unfairly. Doc. 5 at 12. Informal complaints such as these constitute protected activity. *See Giscombe v. N.Y.C. Dep't. of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014); *Lewis v. N.Y.C. Transit Auth.,* 12 F. Supp. 3d 418, 448–50 (E.D.N.Y. Mar. 31, 2014).

---

[8] Plaintiff's age, sex, and disability discrimination claims under Title VII, the ADEA, and the ADA alternatively fail because Plaintiff fails to plead sufficient facts to raise even a minimal plausible inference that Goodwill intended to discriminate against her on the basis of these traits. *See Littlejohn*, 795 F.3d at 310–11. By contrast, Plaintiff has pleaded sufficient facts to support a plausible inference of a race-based motive. *See Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) ("[T]he inference of discriminatory intent supported by the pleaded facts [need not] be *the most plausible* explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible.") (emphasis in original); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face . . . .").

Plaintiff alleges that Manager Ramos referred to Plaintiff's May 7 discussion with District Manager Despiau when they spoke on May 22.  Doc. 5-1 at 2.  Moreover, the EEOC sent Goodwill a Notice regarding Plaintiff's charge on June 9, 2014.  *Id.* at 7.  Thus, Plaintiff also sufficiently alleges knowledge of these complaints.

Plaintiff does not make clear which of Goodwill's many actions serve as the basis of her retaliation claims.  It is apparent from Plaintiff's submissions, however, that Plaintiff believes Goodwill retaliated against her by issuing her an informal written warning on May 22, 2014 and issuing her a formal written warning, a final written warning, and a negative performance evaluation on July 15, 2014.  Although the Court has already deemed these actions insufficient to form the basis of Plaintiff's discrimination claims, adverse actions in the retaliation context are "not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).  Rather, in the retaliation context, an adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 68 (internal quotation marks omitted). "Context matters."  *Id.* at 69.  Thus, actions must be considered "both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable."  *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).

Courts have recognized that "a disciplinary warning letter may constitute an adverse action in the retaliation context."  *Thomson v. Odyssey House*, No. 14 Civ. 3857 (MKB), 2015 WL 5561209, at *21 (E.D.N.Y. Sept. 21, 2015) (citing *Fahmy v. Duane Reade, Inc.*, No. 04 Civ. 1798 (DLC), 2006 WL 1582084, at *10 (S.D.N.Y. June 9, 2006)).  Moreover, the Second Circuit has found that "a poor performance evaluation could very well deter a reasonable worker from

complaining." *Vega*, 801 F.3d at 92 (citing *Krinsky v. Abrams*, No. 01 Civ. 5052 (SLT) (LB), 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007); and *White*, 458 U.S. at 68).  Here, the Court finds that, in context, the disciplinary warnings and negative performance evaluation that Plaintiff received are sufficiently adverse to survive the pleading stage.  *See also Ibok v. Sec. Indus. Automation Corp.*, 369 F. App'x 210, 214 (2d Cir. 2010) (finding that "adverse actions in the form of warnings, a negative performance review, the elimination of [plaintiff's] shift, and, ultimately, his firing" were sufficient to establish a *prima facie* case of retaliation).

The Court also finds that Plaintiff sufficiently pleads a causal connection between her complaints and these adverse actions.  As the Second Circuit has explained:

> A causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."

*Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  Plaintiff received her first informal warning five days after complaining to the District Manager, and she received her second and third warning and negative performance evaluation approximately one month after Goodwill received notice of her EEOC charge.  The temporal proximity of her complaints and the alleged retaliatory actions is sufficient to plausibly support an indirect inference of causation.  *See id.* at 319–20 (finding sufficient allegations that a retaliatory action occurred within days after complaints of discrimination); *Vega*, 801 F.3d at 92 (finding sufficient allegations that a retaliatory action occurred within three months after the filing of an EEOC charge).

Other of Plaintiff's allegations also support an inference of causation.  Plaintiff alleges that other employees who were late on May 22, 2014 did not receive a warning like she did.

Moreover, Plaintiff alleges that when Manager Ramos gave her the warning, she also stated that "any problems should remain in the office . . . with her and" Assistant Manager De La Torre, Doc. 5-1 at 2, suggesting a connection between the warning and Plaintiff's prior complaint to the District Manager. Plaintiff also alleges that the warnings she received on July 15, 2014 were based on Assistant Manager De La Torre's false account of her conduct. In addition, the fact that Plaintiff simultaneously received two warnings—one formal, one final—for what appears to be the same incident renders plausible a retaliatory motive.

Accordingly, Plaintiff may proceed on her retaliation claims under Title VII, the ADEA, and the ADA.

### 3. Hostile Work Environment

In order to establish a claim for hostile work environment under Title VII or the ADEA,[9] the harassment must be "sufficiently severe of pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Terry*, 336 F.3d at 147 (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)). A plaintiff must establish that the complained of conduct: (1) "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive;" (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive;" and (3) "creates such an environment because of the plaintiff's" protected characteristic. *Patane v. Clark*, 508 F.3d 106, 113 (2d. Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)); *see also Terry*, 336 F.3d at 148 ("The same standards [for Title VII] apply to hostile work environment

---

[9] The Second Circuit has "not yet decided whether a hostile work environment claim is cognizable under the ADA." *Hinz v. Vill. of Perry*, 667 F. App'x 3, 3–4 (2d Cir. 2016) (quoting *Robinson v. Dibble*, 613 F. App'x 9, 12 n.2 (2d Cir. 2015)). However, because Plaintiff fails to plausibly allege that she is disabled within the meaning of the ADA, or that any of Goodwill's conduct was motivated by her disability, even a cognizable claim would warrant dismissal. *Id.* at 4.

claims brought under the ADEA.") (citing *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)).

In determining whether a hostile work environment claim exists, courts must look at the "totality of the circumstances." *Terry*, 336 F.3d at 148 (quoting *Richardson v. N.Y. State Correctional Serv.*, 180 F.3d 426, 437–38 (2d Cir. 1999)). Among the factors to consider are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Incidents must be "sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation marks and citations omitted). While single, isolated acts usually do not fulfill the requirement, one may "meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano*, 294 F.3d at 374; *see Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000).

Considering the totality of Plaintiff's allegations, the Court finds that Plaintiff has not sufficiently pleaded a hostile work environment claim. To be sure, Plaintiff describes a number of troubling and unpleasant experiences. However, the Court finds that the incidents she describes, taken together, do not "meet the threshold of severity or pervasiveness required for a hostile work environment claim." *Alfano*, 294 F.3d at 376 (vacating award for hostile work environment, because the "humiliating" and "plainly offensive" incidents were "too few, too separate in time, and too mild . . . to create an abusive working environment" and because no incident was "of such severity and character as to itself subvert the plaintiff's ability to function in the workplace"); *see also Wilson v. Consol. Edison Co. of N.Y., Inc.*, No. 96 Civ. 7546 (RCC),

21

2000 WL 335733, at *6 (S.D.N.Y. Mar. 30, 2000) (dismissing hostile work environment claim because "plaintiff's allegations of isolated encounters that were not definitively discriminatory [did] not amount to severe and pervasive conduct").

Plaintiff's hostile work environment claims under Title VII, the ADEA, and the ADA are therefore dismissed.

### 4. Constructive Discharge

Although it is not apparent from her pleadings whether Plaintiff is asserting a claim on the basis of constructive discharge, she does state in her opposition brief that she "resigned her position due to continued discrimination." Doc. 34 at 2. The Court thus liberally construes Plaintiff's pleading as asserting such a claim. *Triestman*, 470 F.3d at 474.

As an initial matter, Goodwill argues that Plaintiff cannot sustain a claim based on her resignation, because she failed to exhaust such a claim. Def.'s Mem. at 6–8.[10] In order to bring a claim under Title VII or the ADEA,[11] a plaintiff must first exhaust her administrative remedies with the EEOC or the equivalent state-level agency, in this case the NYSDHR. *See Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 462, 467 (S.D.N.Y. 2005) (Title VII); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562–63 (2d Cir. 2006) (ADEA), *aff'd*, 552 U.S. 389 (2008). Before a plaintiff may file a federal suit under one of these statutes: (1) the claim forming the basis of the suit must first be raised in the plaintiff's charge with the EEOC or the equivalent state agency, and (2) the charge must be filed with the EEOC within 180 days of the allegedly unlawful act, or with the equivalent state agency within 300 days. *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). For Title VII claims, the plaintiff must additionally

---

[10] Goodwill does not argue that Plaintiff failed to exhaust any other aspect of her claims.

[11] Plaintiff cannot sustain a claim for constructive discharge under the ADA, as she fails to plausibly allege that she was disabled within the meaning of the statute. *See McMillan*, 711 F.3d at 125.

receive a Notice of Right to Sue from the EEOC before bringing suit. *Id.* ADEA plaintiffs, on the other hand, do not need to first obtain a Notice of Right to Sue, but rather need only wait sixty days after filing the EEOC or NYSDHR charge before bringing suit. *Holowecki*, 440 F.3d at 563 (quoting *Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 166 (2d Cir. 1998)). Failure to exhaust these administrative remedies constitutes a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Williams*, 458 F.3d at 71.

Even if a claim was not included in a plaintiff's EEOC charge, she may still raise the claim in a district court complaint if the claim is "reasonably related" to the allegations contained in the charge. *Williams*, 458 F.3d at 70 (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). The Second Circuit recognizes three circumstances where a claim would be considered reasonably related: (1) if the conduct complained of would fall within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge; (2) if the claim alleges retaliation by an employer against the employee for filing the charge; and (3) if the claim alleges further incidents of discrimination carried out in precisely the same manner alleged in the charge. *Id.* at 70 & n.1 (quoting *Butts*, 990 F.2d at 1402–03; and *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001)).

Here, "the source of the discrimination that led to the constructive discharge was the same discrimination that the EEOC investigated, and investigation of this constructive discharge would have fallen within the scope of the EEOC investigation that could have reasonably been expected to grow out of the charge of discrimination." *Coffey v. Cushman & Wakefield, Inc.*, No. 01 Civ. 9447 (JGK), 2002 WL 1610913, at *6 (S.D.N.Y. July 22, 2002). Accordingly, Plaintiff adequately exhausted her constructive discharge claim.

Nevertheless, the Court finds that Plaintiff fails to adequately plead such a claim.  "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry*, 336 F.3d at 151–52.  The plaintiff's working conditions must be "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  *Id.* at 152 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)).  In addition, in order to state a *prima facie* case of constructive discharge, a plaintiff must establish that the constructive discharge "occurred in circumstances giving rise to an inference of discrimination on the basis of [his] membership in [a protected] class."  *Id.* (quoting *Chertkova*, 92 F.3d at 91).

Here, the Court finds Plaintiff's allegations insufficient to state a claim for constructive discharge.  To the extent Plaintiff is alleging that she was constructively discharged due to a hostile work environment at Goodwill, her claim fails along with her hostile work environment claim.  *See Penn. State Police v. Suders*, 542 U.S. 129, 146–47 (2004) (construing "constructive discharge" stemming from a hostile work environment as an "aggravated case of" hostile work environment).  The Court finds that Plaintiff's remaining allegations of discrimination are not severe enough to conclude that a reasonable person would have felt compelled to resign.

Accordingly, Plaintiff's claims for constructive discharge under Title VII, the ADEA, and the ADA are dismissed.

### B.  State Law Claims

#### 1.  NYSHRL

Claims for retaliation under the NYSHRL are analyzed under the same standards as Title VII, the ADEA, and the ADA.  *See King v. Town of Wallkill*, 302 F. Supp. 2d 279, 293

(S.D.N.Y. 2004) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir.2002)); *Coffey*,

2002 WL 1610913, at * 5 (citing *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997)).

Accordingly, Plaintiff's retaliation claims under the NYSHRL survive dismissal for the same

reasons as her claims under these federal statutes.

NYSHRL claims for employment discrimination are analyzed under the same standards

as Title VII and the ADEA.  *See Tolbert v. Smith*, 790 F.3d 427, 434–35, 439 (2d Cir. 2015);

*George v. Prof'l Disposables Int'l, Inc.*, No. 15 Civ. 3385 (RA) (BCM), 2016 WL 3648371, at

*7 (S.D.N.Y. June 1, 2016), *adopted by* 2016 WL 3906715 (S.D.N.Y. July 14, 2016); *Cappelli v.

Jack Resnick & Sons, Inc.*, No. 13 Civ. 3481 (GHW), 2016 WL 958642, at *7 (S.D.N.Y. Mar. 8,

2016); *Guzman v. Macy's Retail Holdings, Inc.*, No. 09 Civ. 4472 (PGG), 2010 WL 1222044, at

*7–8 (S.D.N.Y. Mar. 29, 2010); *see also Aurecchione v. N.Y. State Div. of Human Rights*, 771

N.E.2d 231, 233 (N.Y. 2002) (noting that Title VII and the NYSHRL "address the same type of

discrimination, afford victims similar forms of redress, are textually similar and ultimately

employ the same standards of recovery").  Plaintiff's race-, sex-, and age-based discrimination

claims under the NYSHRL fail, therefore, for the same reasons as their counterparts under Title

VII and the ADEA.

By contrast, the NYSHRL is more liberal than the ADA with respect to disability-based

discrimination claims.  The NYSHRL defines a "disability" as:

> (a) a physical, mental or medical impairment resulting from
> anatomical, physiological, genetic or neurological conditions which
> prevents the exercise of a normal bodily function or is demonstrable
> by medically accepted clinical or laboratory diagnostic techniques
> or (b) a record of such an impairment or (c) a condition regarded by
> others as such an impairment, provided, however, that in all
> provisions of this article dealing with employment, the term shall be
> limited to disabilities which, upon the provision of reasonable
> accommodations, do not prevent the complainant from performing

in a reasonable manner the activities involved in the job or occupation sought or held.

N.Y. Exec. Law § 292(21) (McKinney 2016).  Thus, "an individual can be disabled under the [NYSHRL] if his or her impairment is demonstrable by medically accepted techniques; it is not required [as with the ADA] that the impairment substantially limit that individual's normal activities."  *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 155 (2d Cir. 1998).  Here, because Plaintiff fails to sufficiently plead even the more liberal form of a "disability" under the NYSHRL, her disability-based discrimination claims fail under the state statute.

### 2. NYCHRL

The NYCHRL affords "broader protections" than the NYSHRL, *Romanello v. Intesa Sanpaolo, S.p.A.,* 998 N.E.2d 1050, 1052 (N.Y. 2013), and "NYCHRL claims . . . are reviewed independently from and more liberally than their federal and state counterparts," *LaSalle v. City of New York*, No. 13 Civ. 5109 (PAC), 2015 WL 1442376, at *3 (S.D.N.Y. Mar. 30, 2015) (internal quotation marks omitted).

New York courts have interpreted the NYCHRL's anti-retaliation provision more broadly than its federal counterparts.  *See Albunio v. City of New York*, 947 N.E.2d 135, 138 (N.Y. 2011); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) ("[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.") (citing *Albunio*, 947 N.E.2d 135; and *Williams*, 61 A.D.3d 62, 69–70 (1st Dep't 2009)).  Plaintiff's retaliation claims under the NYCHRL therefore survive dismissal for the same reasons as her other retaliation claims.

The NYCHRL's anti-discrimination provision is also broader than the statutes the Court has addressed thus far.  To prove a claim for discrimination under the NYCHRL, the plaintiff need only demonstrate that "she has been treated less well than other employees" because of her protected trait.  *Mihalik*, 715 F.3d at 110 (quoting *Williams,* 61 A.D.3d at 78).  "Under this standard, the conduct's severity and pervasiveness are relevant only to the issue of damages."  *Id.* (citing *Williams*, 61 A.D.3d at 76).

The Court finds that Plaintiff's allegations are sufficient to sustain a race-based discrimination claim under the NYCHRL.  Plaintiff alleges numerous examples of being treated "less well" than her Hispanic colleagues, and she has alleged enough to support a plausible inference that the treatment she endured was motivated at least in part by her race.  By contrast, Plaintiff fails to sufficiently allege a discriminatory motive based on her age, gender, or disability.  Thus, those aspects of her discrimination claims under the NYCHRL are dismissed.[12]

## C.  Leave to Amend

The Second Circuit has instructed Courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal quotation marks omitted).  Here, while Plaintiff has already had the opportunity to amend her original Complaint, in *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed that the "liberal spirit" of the Federal Rule of Civil Procedure 15 embodies a "strong preference for resolving disputes on the merits."  *See id*. at 190–91 (quoting

---

[12] The NYCHRL defines a "disability" broadly to encompass "any physical, medical, mental, or psychological impairment, or a history or record of such impairment," including "an impairment of any system of the body." N.Y.C. Admin. Code § 8-102(16) (2017).  The Court need not decide whether Plaintiff's alleged history of strokes and poor memory would be sufficient to meet this more liberal definition.

*Williams v. Citigroup Inc*., 659 F.3d 208, 212–13 (2d Cir. 2011)).  *Loreley* thus counsels strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.  *Id.* at 190–91.

As this is the Court's first opportunity to highlight the precise defects of Plaintiff's pleading and it is not yet apparent that another opportunity to amend would be futile, Plaintiff will be permitted to replead those claims the Court has dismissed.

## IV. CONCLUSION

For the reasons set forth above, Goodwill's motion to dismiss is GRANTED in part and DENIED in part.  Plaintiff is permitted to proceed on all of her retaliation claims and her race-based discrimination claim under the NYCHRL.  Plaintiff is granted leave to replead the remainder of her claims in a Second Amended Complaint.  If Plaintiff chooses to file a Second Amended Complaint, she must do so by **May 1, 2017**.[13]  Otherwise, the matter will go forward only with respect to the retaliation claims and race-based discrimination claim under the NYCHRL.[14]  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 27, and to mail a copy of this Opinion and Order to Plaintiff.

---

[13] Plaintiff is advised that she may seek advice from the new legal clinic opened in this District to assist people who are parties in civil cases and do not have lawyers.  The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court (and therefore, among other things, cannot accept filings on behalf of the Court, which must still be made by any unrepresented party through the Pro Se Intake Unit).  The Clinic is located in the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in Room LL22, which is just inside the Pearl Street entrance to that Courthouse.  The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed.  Plaintiff can make an appointment in person or by calling 212-659-6190.

[14] Goodwill argues that Plaintiff's Amended Complaint should alternatively be dismissed for failure to provide a "short and plain statement" of her claims, Def.'s Mem. at 22–24 (quoting Fed. R. Civ. P. 8(a)), or that, at the very least, Plaintiff should be required to replead her surviving claims to provide a "more definite statement," *id.* at 24 (quoting Fed. R. Civ. P. 12(e)).  Although Plaintiff attaches a number of lengthy exhibits to her Amended Complaint, Plaintiff's primary pleading is contained on a four-page form made available by the Court for *pro se* plaintiffs. Doc. 5.  Other litigants before this Court have not had trouble responding to such a form.  *See, e.g.*, *Pollard v. N.Y.C. Health & Hosp. Corp.*, No. 13 Civ. 4759 (ER) (S.D.N.Y. Sept. 21, 2016).  Accordingly, the Court will not dismiss Plaintiff's claims pursuant to Rule 8(a)(2) or require a more definitive statement pursuant to Rule 12(e).

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:    March 29, 2017
          New York, New York

                                          _____
                                          Edgardo Ramos, U.S.D.J.